**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

FARID LACHKAR,
an individual,

Case No.:

Plaintiff,
v.

UNITED WHOLESALE
MORTGAGE, LLC
a foreign limited liability company,
EQUIFAX INFORMATION
SERVICES LLC,
a foreign limited liability company, and
EXPERIAN INFORMATION
SOLUTIONS, INC.,

Defendants.
_______________________________________/

**PLAINTIFF'S NOTICE OF LEAD COUNSEL DESIGNATION**

Plaintiff, FARID LACHKAR, by and through the undersigned counsel, pursuant to Middle District of Florida Local Rule 2.02(a), hereby designates Aaron M. Swift, Esq. as Lead Counsel for Plaintiff.

**COMPLAINT**

**COMES NOW**, Plaintiff, FARID LACHKAR (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby files this Complaint against Defendants, UNITED WHOLESALE MORTGAGE, LLC (hereinafter, "UWM"), EQUIFAX INFORMATION SERVICES LLC (hereinafter, "Equifax"), and EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian") (hereinafter

collectively, "Defendants"). In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1. This is an action brought by an individual consumer for damages for UWM's violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein UWM improperly credit-reported and subsequently improperly verified its credit reporting of an account reaffirmed through bankruptcy without accurately and completely furnishing all account information to Equifax, Experian, and Trans Union.

2. Furthermore, this is an action for damages for Equifax's and Experian's violations of the FCRA wherein Equifax and Experian each reported false and incomplete information related to Plaintiff's mortgage account with UWM after Plaintiff reaffirmed such account through his bankruptcy case and after Plaintiff repeatedly disputed Defendants' reporting of the account furnished by UWM.

## JURISDICTION, VENUE & PARTIES

3. Jurisdiction of this Court arises under 28 United States Code, Section 1331, pursuant to the FCRA, 15 United States Code Section 1681, et seq.

4. Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District.

5. Venue is proper in this District as the acts and transactions described herein occur in this District and Plaintiff filed his related bankruptcy case in this District.

6. At all material times herein, Plaintiff is a natural person residing in

Seminole County, Florida.

7. At all material times herein, UWM is a foreign limited liability company with its principal place of business located at 585 South Boulevard E, Pontiac, Michigan 48341.

8. At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia, with its principal place of business located at 1550 W Peachtree Street, Atlanta, Georgia 30309.

9. At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

## FCRA STATUTORY STRUCTURE

10. Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 United States Code, Section 1681b.

11. Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

12. Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies

the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute. *Id.* at § i(a).

13. Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer. *Id.* at § i(a)(4).

14. Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5).

15. Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that

compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

16. Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

17. Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

**<u>GENERAL ALLEGATIONS</u>**

18. At all material times herein, Plaintiff is an alleged "consumer" as defined by the FCRA, Section 1681a(c) because he is an individual and allegedly obligated to pay a debt.

19. At all material times herein, UWM, itself and through its subsidiaries, regularly services consumer mortgage loan accounts—and credit reports debts associated with the same—allegedly owed by consumers residing in Seminole County, Florida.

20. At all material times herein, UWM furnishes information to Equifax, Experian, and Trans Union concerning a consumer mortgage loan account referenced

by account number ending -9157 (hereinafter, the "Account").

21. At all material times herein, Plaintiff reaffirmed the Account through his Bankruptcy Case and continued to make payments on the Account.

22. At all material times herein, UWM is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

23. At all material times herein, Equifax, Experian, and Trans Union are each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports. Equifax, Experian, and Trans Union each disburse such consumer reports to third parties under contract for monetary compensation.

24. At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

25. All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

26. On or about February 19, 2025, I filed a Voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, identified by case number 6:25-bk-00932-TPG (hereinafter, "Bankruptcy Case").

27. In Plaintiff's Bankruptcy Case petition and schedules, Plaintiff listed his mortgage Account as a secured debt owed to UWM.

28. UWM received notice of Plaintiff's Bankruptcy Case.

29. On or about March 25, 2025, Plaintiff and UWM entered into a reaffirmation agreement—which was filed in Plaintiff's Bankruptcy Case as a publicly available court record—and Plaintiff continued making payments on his mortgage Account since the reaffirmation agreement.

30. More specifically, as of March 2025, Plaintiff reaffirmed the Account in the amount of $190,950.00 with monthly payments of $1,403.91 since March 2025.

31. As such, the Account furnished by UWM and reported by Equifax, Experian, and Trans Union was reaffirmed through Plaintiff's bankruptcy case and therefore ***not*** subject to be discharged through Plaintiff's Bankruptcy Case.

32. The United States Bankruptcy Court entered its *Order of Discharge* in Plaintiff's Bankruptcy Case in May 2025 and subsequently closed the Bankruptcy Case.

33. On or about August 29, 2025, Plaintiff obtained copies of his credit reports from Equifax, Experian, and Trans Union.

34. Despite Plaintiff entering into the reaffirmation agreement with UWM with respect to the Account and continuing to make payments on the Account since entering into the reaffirmation agreement, UWM, Equifax, Experian, and Trans Union were each reporting the Account as discharged as of August 2025 and were failing to report that the Account was reaffirmed through Plaintiff's Bankruptcy Case.

35. Further, Defendants were failing to report the Account balance and were failing to report Plaintiffs' monthly payment history after February 2025.

36. In November 2025, Plaintiff sent a letter to Equifax, Experian, and Trans Union—with the assistance of Plaintiff's attorneys—wherein Plaintiff disputed Defendants' reporting of the Account as discharged and advised that such Account was reaffirmed through Plaintiff's Bankruptcy Case (hereinafter, "First Dispute").

37. Additionally, Plaintiff's First Dispute provided the reaffirmed initial balance and the amount of monthly payments Plaintiff made on the Account since the reaffirmation agreement.

38. Plaintiff enclosed a copy of the reaffirmation agreement with UWM in support of his First Dispute.

39. Plaintiff's First Dispute included sufficient information to allow Defendants to identify Plaintiff's credit file, specifically, Plaintiff's full name, current address, date of birth, and the last four (4) digits of his Social Security number.

40. Equifax received Plaintiff's First Dispute.

41. Equifax communicated Plaintiff's First Dispute to UWM including all enclosures.

42. UWM received notice of Plaintiff's First Dispute from Equifax.

43. Experian received Plaintiff's First Dispute.

44. Experian communicated Plaintiff's First Dispute to UWM including all enclosures.

45. UWM received notice of Plaintiff's First Dispute from Experian.

46. Plaintiff did not receive dispute results from Equifax or Experian regarding his First Dispute.

47. Equifax did not send dispute results to Plaintiff regarding his First Dispute.

48. Experian did not send dispute results to Plaintiff regarding his First Dispute.

49. On or about November 12, 2026, Trans Union sent dispute results to Plaintiff in response to Plaintiff's First Dispute wherein Trans Union advised that it deleted its reporting of the UWM Account because it could not reasonably verify the Account information provided by UWM.

50. In January 2026, and because Plaintiff did not receive any dispute results from Equifax, Plaintiff obtained a copy of his Equifax credit report.

51. Despite Plaintiff's First Dispute, Equifax *still* reported the Account as discharged while failing to report the Account as reaffirmed, failing to report the Account balance, and failing to report all of Plaintiff's payments on the Account.

52. Further, despite Plaintiff's First Dispute, Equifax failed to mark the Account as disputed by Plaintiff.

53. In January 2026, Plaintiff repeatedly attempted to obtain a copy of his Experian credit report because he did not receive dispute results but was repeatedly denied a copy of his credit report.

54. On or about February 5, 2026, Plaintiff sent *another* letter to Equifax, Experian, and Trans Union—with the assistance of Plaintiff's attorneys—wherein

Plaintiff disputed Defendants' reporting of the Account as discharged and advised that such Account was reaffirmed through Plaintiff's Bankruptcy Case (hereinafter, "Second Dispute").

55. Additionally, Plaintiff's Second Dispute provided the reaffirmed initial balance and the amount of monthly payments Plaintiff made on the Account since the reaffirmation agreement.

56. Furthermore, Plaintiff's Second Dispute advised Trans Union that Plaintiff did not wish for the Account to be deleted, and instead, requested that Defendants report the Account accurately as reaffirmed, with the current balance, and with all payment history.

57. Plaintiff enclosed a copy of the reaffirmation agreement with UWM in support of his Second Dispute.

58. Plaintiff's Second Dispute included sufficient information to allow Defendants to identify Plaintiff's credit file, specifically, Plaintiff's full name, current address, date of birth, and the last four (4) digits of his Social Security number.

59. Equifax received Plaintiff's Second Dispute.

60. Equifax communicated Plaintiff's Second Dispute to UWM including all enclosures.

61. UWM received notice of Plaintiff's Second Dispute from Equifax.

62. Experian received Plaintiff's Second Dispute.

63. Experian communicated Plaintiff's Second Dispute to UWM including all enclosures.

64. UWM received notice of Plaintiff's Second Dispute from Experian.

65. On or about February 1, 2026, Equifax sent a letter to Plaintiff's attorney which advised Equifax was unable to locate Plaintiff's credit file based on the information provided in Plaintiff's First Dispute and requested additional documents from Plaintiff to verify his identity and Social Security Number.

66. On or about March 3, 2026, Equifax sent a letter to Plaintiff in response to Plaintiff's Second Dispute including Equifax's dispute results.

67. Notably, although Equifax advised that it could not identify Plaintiff's Equifax credit file, Equifax clearly did identify Plaintiff's credit file and the disputed Account as Equifax's dispute results stated that Equifax verified its reporting with UWM.

68. More specifically, despite Plaintiff's First Dispute and Second Dispute, UWM and Equifax purportedly verified their reporting of the Account as discharged, failed to report a balance on the Account, failed to report the account as reaffirmed, and failed to report all of Plaintiff's monthly payments on the Account.

69. Plaintiff did not receive dispute results from Experian in response to his Second Dispute.

70. Experian did not send dispute results to Plaintiff regarding his Second Dispute.

71. Yet again, Plaintiff attempted to obtain a copy of his Experian report because he did not receive dispute results from Experian and was unable to obtain his Experian credit report.

72. On or about April 9, 2026, Plaintiff sent *another* letter to Equifax, Experian, and Trans Union—with the assistance of Plaintiff's attorneys—wherein Plaintiff *again* disputed Defendants' reporting of the Account as discharged and advised that such Account was reaffirmed through Plaintiff's Bankruptcy Case (hereinafter, "Third Dispute").

73. Additionally, Plaintiff's Third Dispute provided the reaffirmed initial balance and the amount of monthly payments Plaintiff made on the Account since the reaffirmation agreement.

74. Furthermore, Plaintiff's Third Dispute advised Trans Union that Plaintiff did not wish for the Account to be deleted, and instead, requested that Defendants report the Account accurately as reaffirmed, with the current balance, and with all payment history.

75. Plaintiff enclosed a copy of the reaffirmation agreement with UWM in support of his Third Dispute.

76. Plaintiff's Third Dispute included sufficient information to allow Defendants to identify Plaintiff's credit file, specifically, Plaintiff's full name, current address, date of birth, and the last four (4) digits of his Social Security number.

77. Equifax received Plaintiff's Third Dispute.

78. Equifax communicated Plaintiff's Third Dispute to UWM including all enclosures.

79. UWM received notice of Plaintiff's Third Dispute from Equifax.

80. Experian received Plaintiff's Third Dispute.

81. Experian communicated Plaintiff's Third Dispute to UWM including all enclosures.

82. UWM received notice of Plaintiff's Third Dispute from Experian.

83. Plaintiff did not receive dispute results from Equifax or Experian regarding Plaintiff's Third Dispute.

84. Equifax did not send dispute results to Plaintiff regarding Plaintiff's Third Dispute.

85. Experian did not send dispute results to Plaintiff regarding Plaintiff's Third Dispute.

86. In June 2026, and because Plaintiff did not receive any dispute results, Plaintiff obtained copies of his credit report from Experian.

87. Sometime prior to June 2026, Experian updated its reporting of the Account to show the current balance and payments made by Plaintiff, but Experian still failed to mark the Account as reaffirmed through Plaintiff's Bankruptcy Case.

88. In June 2026 and for weeks thereafter, Plaintiff repeatedly attempted to obtain his credit report from Equifax but was unable to obtain his Equifax report.

89. Upon information and belief, Equifax continued to report the Account as discharged rather than reaffirmed through Plaintiff's Bankruptcy Case, failed to report the accurate balance, and failed to report all payments made by Plaintiff.

90. On or about September 10, 2026, Plaintiff received a credit alert with respect to the Account.

91. Despite Plaintiff's repeated disputes to Defendants, Defendants changed

their reporting of the Account to show as closed instead of reaffirmed with ongoing positive payment history.

92. After Plaintiff's First Dispute, Equifax and Experian prepared and published Plaintiff's credit information to Plaintiff's current creditors and potential lenders which included the Account as a discharged consumer debt rather than a reaffirmed, open, and timely paid Account obligation, resulting in the Account appearing as a derogatory account on Plaintiff's credit reports and negatively impacting Plaintiff's credit scores.

**DAMAGES**

93. As a result of Defendants' reporting of the Account, Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that he would be denied credit as a result of the erroneous, incorrect, and incomplete reporting of the Account if he needed to obtain credit in the near future, and that Plaintiff would either be denied credit or pay higher interest rates in the event he could obtain financing.

94. Overall, Plaintiff suffered damage to his credit reputation as a result of Defendants' conduct, Defendants defamed Plaintiff's credit worthiness as well as Plaintiff's personal character, and Defendants unfairly discriminated against Plaintiff by ignoring—or failing to reasonably review—Plaintiff's documents enclosed with his repeated disputes.

95. As a result of Defendants' conduct, actions, and inactions, Plaintiff was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting

of the Account as discharged rather than reaffirmed, he did not wish to further damage his credit scores with futile credit inquires, and he was continually evaluated for credit using consumer reports that inaccurately reported the Account as discharged—and/or wholly failed to report Plaintiff's mortgage Account—resulting in the Account being reported as a derogatory, negative, or adverse account and/or resulting in Plaintiff not receiving the benefit of his timely monthly payments on the Account.

96. Overall, Plaintiff suffered damage to his reputation as a result of Defendants' conduct.

97. Further, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to Defendants that he reaffirmed the Account including supplying Defendants with supporting documentation, Plaintiff must simply endure Defendants' inaccurate and incomplete reporting of the Account.

98. Plaintiff retained Swift Law, PLLC for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

**COUNT ONE:**
**FAIR CREDIT REPORTING ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)</u>**
**(As to UWM Only)**

Plaintiff re-alleges paragraphs one (1) through ninety-eight (98) as if fully restated herein and further states as follows:

99. UWM is subject to, and violated the provisions of, 15 United States

Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate and incomplete trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Equifax, Experian, and TransUnion update their reporting of the Account in Plaintiff's credit reports and credit file after re-investigating Plaintiff's repeated disputes.

100. As described above, Plaintiff reaffirmed his mortgage Account with UWM through his Bankruptcy and continued making his timely monthly payments after entering into the reaffirmation agreement with UWM.

101. Despite Plaintiff reaffirmed the Account with UWM, UWM reported the Account to Equifax, Experian, and Trans Union as discharged, meaning UWM did not report a balance on the Account, did not report the Account as reaffirmed, and did not report all of Plaintiff's payments on the Account.

102. Despite UWM entering into the reaffirmation agreement for the Account and despite UWM receiving notice of Plaintiff's disputes from Equifax, Experian, and/or TransUnion, UWM willfully and/or negligently failed to request that Experian, Equifax, and TransUnion update their reporting of the tradeline associated with the Account and continued to report the Account as discharged without reporting a balance, without reporting all payment information, and without marking the Account as reaffirmed through Plaintiff's Bankruptcy Case.

103. More specifically, between November 2025 and April 2026, Plaintiff repeatedly disputed UWM's reporting of the Account to Equifax, Experian, and Trans

Union, and the credit reporting agencies forwarded Plaintiff's disputes to UWM.

104. In response to Plaintiff's dispute, UWM inaccurately and falsely verified its reporting of the Account to Equifax as discharged *at least* once.

105. UWM's refusal to request that Equifax, Experian, and Trans Union update their reporting of the Account as Plaintiff requested was intentionally, willfully, and knowingly done as UWM clearly possessed knowledge that the Account was reaffirmed and UWM knew that Plaintiff continued to make payments on the Account after entering into the reaffirmation agreement.

106. UWM's re-investigations were not conducted in good faith.

107. UWM's re-investigations were not conducted reasonably.

108. UWM's re-investigations were not conducted using all information and documents reasonably available to UWM.

109. As a result of UWM's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory, inaccurate, and incomplete reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account as discharge or wholly failed to report the UWM Account, resulting in Plaintiff not receiving the benefit of his timely monthly payments on the Account.

110. UWM's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as

stated herein.

111. UWM's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT TWO:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**
**(As to Equifax and Experian)**

Plaintiff re-alleges paragraphs one (1) through ninety-eight (98) as if fully restated herein and further states as follows:

112. Equifax and Experian are each subject to, and both violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

113. Equifax and Experian willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports with respect to the Account.

114. Further, Experian and Equifax willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in her Experian and Equifax credit reports

and credit files.

115. Specifically, despite Plaintiff *repeatedly* advising Equifax and Experian that Plaintiff reaffirmed the Account through his Bankruptcy Case and continued making his regular monthly payments, and despite Plaintiff *repeatedly* providing a copy of the underlying reaffirmation agreement, Experian and Equifax each continued to inaccurately and incompletely report the Account as discharged without reporting the current balance owed, without reporting all payment history, and without marking the Account as reaffirmed through Plaintiff's Bankruptcy Case.

116. Additionally, despite Plaintiff's repeated disputes including the underlying reaffirmation agreement, Equifax and Experian each failed to request documents from UWM in support of UWM's reporting of the Account.

117. As a result of Equifax's and Experian's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory, inaccurate, and incomplete reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account as discharge or wholly failed to report the UWM Account, resulting in Plaintiff not receiving the benefit of his timely monthly payments on the Account.

118. Equifax's and Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff

as stated herein.

119. Equifax's and Experian's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i *et seq.***
**(As to Equifax and Experian)**

Plaintiff re-alleges paragraphs one (1) through ninety-eight (98) as if fully restated herein and further states as follows:

120. Experian and Equifax are each subject to, and both violated the provisions of, 15 United States Code, Section: 1681i(a)(1), by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate or incomplete and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; 1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and 1681i(a)(5) by failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified; and 1681i(a)(6) by failing to provide Plaintiff with written notice of Defendants' re-investigation results following each of Plaintiff's disputes.

121. Specifically, Equifax and Experian each willfully and/or negligently

refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

122. Overall, Plaintiff's First Dispute, Second Dispute, and Third Dispute provided Equifax and Experian sufficient information and supporting documentation allowing Equifax and Experian to identify Plaintiff's credit files, to identify the disputed Account, and to identify that the Account was reaffirmed through Plaintiff's Bankruptcy Case.

123. Following Plaintiff's First Dispute and Third Dispute, Equifax did not send any dispute results to Plaintiff.

124. As such, Equifax wholly failed to conduct an investigation or reinvestigation in response to Plaintiff's First Dispute and Third Dispute.

125. Following Plaintiff's Second Dispute, Equifax initially sent a letter to Plaintiff advising that Equifax could not identify Plaintiff's Equifax credit file, but subsequently did in fact identify Plaintiff's file, communicated Plaintiff's Second Dispute to UWM, and continued to report the Account as discharged following Plaintiff's Second Dispute.

126. Following Plaintiff's First Dispute, Second Dispute, and Third Dispute, Experian did not send any dispute results to Plaintiff.

127. As such, Experian wholly failed to conduct an investigation or reinvestigation in response to Plaintiff's First Dispute, Second Dispute, and Third Dispute.

128. Despite Plaintiff's repeated disputes including the underlying

reaffirmation agreement, Equifax and Experian each failed to request documents from UWM

129. Given that Plaintiff reaffirmed the Account, Plaintiff provided a copy of the reaffirmation agreement, and such reaffirmation agreement is available as a public court records, and given Equifax and Experian did not request any documents from UWM supporting UWM's reporting of the Account, Equifax and Experian could not reasonably verify the Account as discharged through Plaintiff's Bankruptcy Case when such Account should have been reported as reaffirmed with a current balance and all payment history information.

130. As such, Equifax's and Experian's purported re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate or incomplete, and each failed to subsequently update and remove the inaccurate information in Plaintiff's credit reports and credit files.

131. Such reporting is false and evidences Equifax's and Experian's failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

132. Equifax's and Experian's reinvestigations of Plaintiff's disputes were not conducted reasonably.

133. Equifax's and Experian's reinvestigations merely copied and relied upon the inaccurate information conveyed by UWM.

134. Equifax's and Experian's reinvestigations of Plaintiff's disputes were not conducted in good faith.

135. Equifax's and Experian's reinvestigation procedures are unreasonable.

136. Equifax's and Experian's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Equifax and Experian.

137. Equifax's and Experian's failure to review and reasonably consider all information received in Plaintiff's disputes—which clearly showed the Account was reaffirmed—was done in bad faith.

138. Equifax's and Experian's reinvestigations were *per se* deficient by reason of these failures in Equifax's and Experian's reinvestigations of Plaintiff's disputes and the Account.

139. As a result of Equifax's and Experian's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory, inaccurate, and incomplete reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account as discharge or wholly failed to report the UWM Account, resulting in Plaintiff not receiving the benefit of his timely monthly payments on the Account.

140. Equifax's and Experian's actions and inactions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

141. Equifax's and Experian's actions in violation of 15 United States Code, Section 1681i *et seq.*, constitute negligent or willful noncompliance—or both—with the

FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a. Judgment against UWM, Equifax, and Experian for maximum statutory damages for violations of the FCRA;

b. Actual damages in an amount to be determined at trial;

c. Compensatory damages in an amount to be determined at trial;

d. Punitive damages in an amount to be determined at trial;

e. An award of attorney's fees and costs; and

f. Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

*/s/ Aaron M. Swift*

**Aaron M. Swift, Esq., FBN 0093088**
Jordan T. Isringhaus, Esq., FBN 0091487
Sean E. McEleney, Esq., FBN 125561
Jessica A. Cowan, Esq., FBN 1069016
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 755-3676
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
smceleney@swift-law.com
jcowan@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*